UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(NORTHERN DIVISION)

In re BLACK & DECKER SHAREHOLDER  )  CLASS ACTION
LITIGATION                                               )  Civil Action No. 09-cv-3011-WMN
                                                              )

**CONSOLIDATED AMENDED CLASS ACTION AND
SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiffs, by their attorneys, allege upon personal knowledge with respect to themselves, and

upon information and belief as to all other allegations based upon, *inter alia*, the investigation of

counsel, as follows:

**NATURE OF THE ACTION**

1.        This is a class and derivative action brought by shareholders of The Black & Decker

Corporation ("Black & Decker" or the "Company") in connection with the proposed sale of Black &

Decker to The Stanley Works ("Stanley") and its wholly-owned subsidiary Blue Jay Acquisition

Corporation ("Blue Jay"), in a stock-for-stock transaction valued at $4.5 billion, or approximately

$57.57 per Black & Decker share (the "Proposed Transaction"), based on Stanley's closing price as

of the last trading day prior to the November 2, 2009 announcement.  Under the terms of the Merger

Agreement, dated as of November 2, 2009, each share of Black & Decker common stock will be

exchanged for 1.275 shares of Stanley common stock.  Upon the consummation of the Proposed

Transaction, Black & Decker will cease to exist as an independent entity.

2.        Without input from the Company's shareholders, the members of Black & Decker's

Board, each of whom is named as a defendant herein (collectively, the "Board" or the "Individual

Defendants"), caused the Company to lock itself into the Merger Agreement with Stanley.  At the

same time, however, at least six members of the Board will join Stanley's Board of Directors (the

"Stanley Board") in connection with the Proposed Transaction, while defendant Nolan D. Archibald

("Archibald") – Black & Decker's Chairman of the Board, President and Chief Executive Officer

("CEO") – secures for himself a lucrative position as the Executive Chairman of the Stanley Board.

3.      Moreover, on December 4, 2009, Stanley, with Black & Decker's input and approval,

issued a joint preliminary proxy statement and prospectus on Form S-4 (the "Proxy") to solicit

shareholder approval of the Proposed Transaction.  In violation of the Board's fiduciary duty to

disclose all material information when seeking shareholder approval, the Proxy omits material

information concerning, among other things, the background of the Proposed Transaction,

Archibald's promised compensation, the synergies expected to result from the Proposed Transaction,

and certain elements of the financial advisors' analyses.  In the event that these deficiencies are not

addressed prior to the dissemination of the definitive (or final) form of the Proxy to Black &

Decker's shareholders, these material omissions will preclude the Company's shareholders from

casting a fully informed vote with respect to the Proposed Transaction.

4.      Accordingly, Plaintiffs allege that the Board breached its fiduciary duties of loyalty,

due care, candor and good faith and fair dealing in pursuing the Proposed Transaction, and that

Stanley and Blue Jay, both of which are parties to the Merger Agreement, aided and abetted such

breaches.  In the absence of equitable relief enjoining the wrongful conduct alleged herein, the

Individual Defendants, aided and abetted by Stanley and Blue Jay, may continue to breach their

fiduciary duties and thus irreparably harm Black & Decker and its public shareholders, for which  no

adequate remedy at law exists.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under 28 U.S.C. §1332(a)(2), because Plaintiffs and

Defendants are citizens of different states (as noted herein) and the amount in controversy exceeds

$75,000, exclusive of interest and costs.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

6.      In addition, Black & Decker and Stanley conduct business in Maryland, and Black & Decker is incorporated and maintains its principal place of business in Maryland.  Moreover, Blue Jay, a wholly owned subsidiary of Stanley formed to effectuate the Proposed Transaction, is a Maryland corporation and a party to the Merger Agreement.

7.      Venue is proper in this District because the conduct at issue took place and had an effect here.

## THE PARTIES

### A.      The Plaintiffs[1]

8.      Plaintiffs are common stockholders of Black & Decker and have owned such stock continuously since prior to the announcement of the Proposed Transaction on November 2, 2009.

9.      Plaintiffs Willard Jacobs ("Jacobs"), Leonard C. Mainor ("Mainor"), Robert C. Ricci ("Ricci") and Mark D. Perrin ("Perrin") are referred to herein collectively as the "Class Plaintiffs," because they assert their claims individually and on behalf of the other unaffiliated public shareholders of Black & Decker.

10.     Plaintiffs John B. Graziadei ("Graziadei") and Sheila Simon ("Simon"), each of whom has owned Black & Decker common stock continuously during the wrongs alleged, are

---

[1]  On the dates indicated, Plaintiffs filed the following four actions in the Circuit Court for the County of Baltimore, which were subsequently removed to this Court: *Graziadei v. Archibald, et al*., Civil Action No. 09-cv-3011-WMN (derivative action filed on November 10, 2009); *Jacobs v. Archibald, et al*., Civil Action No. 09-cv-3012-WMN (class action filed on November 10, 2009); *Mainor, et al. v. Archibald, et al*., Civil Action No. 09-cv-3024-WMN (class action filed on November 12, 2009); and *Perrin v. Archibald, et al*., Civil Action No. 09-cv-3120-WMN (class action filed on November 18, 2009).  *Simon v. Archibald, et al*., Civil Action No. 09-cv-3343-WMN, a shareholder derivative action, was commenced in this Court on December 14, 2009.

referred to herein collectively as the "Derivative Plaintiffs" because they assert claims individually and derivatively in the name and on behalf of Black & Decker.  As detailed herein, Simon made demand on Black & Decker's Board prior to commencing suit.[2]

**B.     Nominal Defendant Black & Decker**

11.     Nominal defendant Black & Decker is a Maryland corporation whose principal corporate offices are located at 701 East Joppa Road, Towson, Maryland 21286.  Founded in 1910, the Company describes itself as a leading global manufacturer and marketer of power tools and accessories, hardware and home improvement products and technology-based fastening systems.

12.     Specifically, the Company's Power Tools and Accessories segment offers corded and cordless electric power tools and equipment; its Hardware and Home Improvement segment offers residential and light commercial door locksets, electronic keyless entry systems, exit devices, keying systems, tubular and mortise door locksets, general hardware, decorative hardware and lamps; and its Fastening and Assembly Systems segment offers a range of metal and plastic fasteners and engineered fastening systems for commercial applications.

13.     With products and services marketed in over 100 countries, Black & Decker enjoys worldwide recognition of its strong brand names and a superior reputation for quality, design, innovation and value.  The Company's common stock is publicly traded on the New York Stock Exchange (the "NYSE") under the symbol "BDK."  As of October 23, 2009, Black & Decker had 60,231,022 shares of common stock outstanding.

**C.     The Individual Defendants and Defendants Stanley and Blue Jay**

---

[2] Plaintiffs' citizenship is as follows: Graziadei – Virginia; Jacobs – South Carolina; Mainor – North Carolina; Ricci – California; Perrin – Washington; and Simon – New Jersey.

14.     At all relevant times, defendant Archibald has served as Chairman of the Board, President and CEO of Black & Decker.  He joined Black & Decker as its President, Chief Operating Officer ("COO") and a member of the Board in September 1985, and was appointed CEO in 1986. He has served continuously in the position of Chairman of the Board since 1987.  Archibald also serves on the Board of Directors of several other public companies, including Brunswick Corporation ("Brunswick"), Lockheed Martin Corporation ("Lockheed") and Huntsman Corporation.  For a three year term following the close of the Proposed Transaction, Archibald will serve as the Executive Chairman of the Stanley Board and as an executive of Stanley, for which he will receive, among other benefits, an annual salary of $1.5 million, an annual bonus award with a target bonus opportunity of $1,875,000, and annual equity awards with an aggregate value of $6,650,000.  Moreover, as further detailed herein, Archibald stands to receive a substantial "cost synergy" bonus on the third anniversary of the completion of the Proposed Transaction, contingent upon the combined company's achievement of certain cost savings goals.

15.     Defendant Norman R. Augustine ("Augustine") has served as member of the Board since 1997.  Augustine is the former Chairman and CEO of Lockheed, on whose Board of Directors Archibald serves, as does Robert Coutts ("Coutts"), a member of the Stanley Board.  In fact, Coutts and Augustine served on the Lockheed Board from December 1996 to April 2005, Archibald served with both of them from April 2002 to April 2005, and Coutts and Archibald served together until Coutts vacated his seat on the Lockheed Board in September 2007.  Augustine is also a member of the Deutsche Bank Americas ("DB Americas") Client Advisory Board.  Deutsche Bank Securities Inc. ("Deutsche Bank") served as one of Stanley's financial advisors for the Proposed Transaction.

16.     Defendant Barbara L. Bowles ("Bowles") has served as a member of the Board since 1993.  She served as Chairman and CEO of The Kenwood Group, Inc., an investment advisory firm

that she founded in 1989, until December 2005, when the firm was acquired by Profit Investment Management.  She was the Vice Chair of Profit Investment Management through 2007.

17.     Defendant George W. Buckley ("Buckley") has served as a member of the Board since 2006.  Buckley served as Chairman, President and CEO of Brunswick from 2000 through 2005, and in various other executive positions at Brunswick from 1997 to 2000.  During his tenure at Brunswick, Buckley served on the Brunswick Board alongside defendant Archibald and various other members of Black & Decker's Board, as well as Lawrence Zimmerman, a member of the Stanley Board.  Since December 2005, Buckley has served as Chairman, President and CEO of 3M Company, for which Patrick Campbell, a member of the Stanley Board, serves as Senior Vice President ("SVP") and Chief Financial Officer ("CFO").

18.     Defendant M. Anthony Burns has served as a member of the Board since 2001.  He occupied various high-level executive positions at Ryder System, Inc. for nearly twenty years.

19.     Defendant Manuel A. Fernandez ("Fernandez") has served as a member of the Board since 1999.  Since 1998, he has been the managing director of SI Ventures, a venture capital firm.  In June 2009, he began serving as non-executive Chairman of SYSCO Corporation, a foodservice distribution company, where he has served as a director since November 2006.  Fernandez also serves on Brunswick's Board alongside defendants Archibald and other Black & Decker directors, and, separately, on the Board of Directors of Flowers Foods, Inc. ("Flowers Foods").

20.     Defendant Benjamin H. Griswold, IV ("Griswold") has served as a member of the Board since 2001.  He joined Alex. Brown & Sons in 1967, was elected vice chairman of the board and director in 1984, became chairman of the board in 1987, and remained with the company, or its successors-in-interest, until his retirement in February 2005.  He was appointed Chairman of Brown Advisory, an asset management and strategic advisory firm, in March 2005.  Griswold also serves on

the DB Americas Client Advisory Board alongside defendant Augustine, and on the Flower Foods Board alongside defendant Fernandez.

21.     Defendant Kim B. Clark ("Clark") has served as a member of the Board since 2003. He was named president of Brigham Young University-Idaho in 2005.

22.     Defendant Anthony Luiso ("Luiso") has served as a member of the Board since 1988. In 1999, he joined Campofrio Alimentacion, S.A., a processed meat-products company in Spain, as president-international and subsequently served as President of Campofrio Spain through 2001.

23.     Defendant Robert L. Ryan ("Ryan") has served as a member of the Board since 2005. In April 1993, he was named the SVP and CFO of Medtronic, Inc., and retired from Medtronic in 2005.  Ryan has served on the Board of Directors of General Mills, Inc. ("General Mills") since 2005, and, from 1998 through 2004, served as a member of the Brunswick Board alongside defendants Archibald, Buckley and Fernandez.

24.     Defendant Mark H. Willes ("Willes") was first elected to the Board in 1990, served until 2001, and was re-elected in 2004.  He joined General Mills in 1980 as Executive Vice President and CFO, was elected President, COO and a director of General Mills in 1985, and was elected Vice Chairman of the General Mills Board in 1992.  In March 2009, he became the President and CEO of Deseret Management Corporation, a private business holding company.

25.     Defendants Archibald, Buckley, Bowles, Augustine, Burns, Clark, Fernandez, Griswold, Luiso, Ryan and Willes are sometimes collectively referred to herein as the "Individual Defendants."   Six of the Individual Defendants, currently unidentified with the exception of Archibald, will serve on the Stanley Board following the close of the Proposed Transaction.

26.     Defendant Stanley is a Connecticut corporation whose principal executive offices are located at 1000 Stanley Drive, New Britain, Connecticut 06053.  Stanley is a manufacturer of tools,

doors, storage and hardware for security, construction, do-it-yourself and industrial applications. Stanley's common stock trades on the NYSE under the symbol "SWK."

27.    Defendant Blue Jay is a Maryland corporation and a wholly owned subsidiary of Stanley.  Stanley formed Blue Jay to effectuate the Proposed Transaction.  Unless otherwise noted, Blue Jay is referred to herein together with Stanley as "Stanley."

28.    The Individual Defendants, together with Black & Decker and Stanley, are sometimes collectively referred to herein as the "Defendants."[3]

## SUBSTANTIVE ALLEGATIONS

29.    On November 2, 2009, Black & Decker and Stanley jointly announced their entry into the Proposed Transaction, pursuant to which Stanley has proposed to acquire each share of Black & Decker common stock in an all-stock transaction then valued at $4.5 billion, or approximately $57.57 per Black & Decker share.  Under the terms of the Proposed Transaction, Black & Decker shareholders will receive 1.275 shares of Stanley common stock for each share that they own.  As a result, Black & Decker shareholders will own approximately 49.5% of the combined company, while Stanley's shareholders will own the other 50.5% (and hence retain majority ownership).  The Proposed Transaction is expected to close during the first half of 2010.

30.    Commenting on the Proposed Transaction, Archibald and John F. Lundgren ("Lundgren"), Stanley's Chairman and CEO, extolled its strategic benefits.  Specifically, Lundgren noted that the Proposed Transaction would result in the "realization of significant cost synergies, operating margin expansion and enhanced growth opportunities."  In turn, Archibald acknowledged

---

[3] The Individual Defendants' citizenship is as follows: Archibald, Augustine, Griswold – Maryland; Bowles, Luiso – Illinois; Buckley, Ryan – Minnesota; Burns, Fernandez – Florida; Clark – Idaho; and Willes – Utah.  In addition, as noted herein, Stanley is a Connecticut corporation whose principal executive offices are located in Connecticut, while Blue Jay is a Maryland corporation.

that "the driving motivation of the transaction is the present value of the $350 million in annual cost synergies and the combined financial strength and product offerings of the merged companies."

31.     Unlike an ordinary strategic acquisition in which the tenure of the target company's executives will end, however, a number of Black & Decker insiders – including certain members of the Board – will continue with the combined company after the close of the Proposed Transaction.

32.     For example, six members of Black & Decker's Board will join the nine members of the Stanley Board in connection with the Proposed Transaction, and "key" members of Black & Decker's executive team will hold positions in the combined company.  Accordingly, these insiders stand to receive substantial benefits associated with their continued employment.  Indeed, as the following chart from Black & Decker's March 16, 2009 Annual Proxy Statement indicates, the members of the Board collectively received benefits valued at $2,453,656 as a result of their service on the Board during 2008 alone – benefits similar in nature to those that at least six members of the Board will continue to accrue as members of the Stanley Board:[4]

| Name[(1)] | Fees Earned or Paid in Cash | Stock Awards[(2)] | All Other Compensation[(3)] | Total |
|---|---|---|---|---|
| Norman R. Augustine | $      –0– | $  252,000 | $       7,291 | $ 259,291 |
| Barbara L. Bowles | 120,054 | 109,946 | 2,362 | 232,362 |
| George W. Buckley | –0– | 242,000 | 3,696 | 245,696 |
| M. Anthony Burns | 45 | 261,955 | 147 | 262,147 |
| Kim B. Clark | 110,000 | 110,000 | 9,659 | 229,659 |
| Manuel A. Fernandez | –0– | 252,000 | 3,138 | 255,138 |
| Benjamin H. Griswold, IV | 110,045 | 109,955 | 704 | 220,704 |
| Anthony Luiso | –0– | 252,000 | 1,404 | 253,404 |
| Robert L. Ryan | 110,000 | 110,000 | 6,818 | 226,818 |
| Mark H. Willes | –0– | 262,000 | 6,437 | 268,437 |

33.     In addition, Archibald, Black & Decker's Chairman, President, and CEO, will serve as the Executive Chairman of the combined company for three years after closing, as well as Co-Chairman of an Integration Steering Committee charged with overseeing the companies' integration. Moreover, although Archibald purportedly waived the right to receive certain change in control

---

[4]  Archibald is omitted from the chart; in addition, the chart's footnote is omitted herein.

benefits under his current employment agreement with Black & Decker, his Executive Chairman

Agreement with Stanley (which Lundgren signed) entitles him to receive an annual base salary of

$1.5 million and a grant of options to acquire 1 million shares of Stanley common stock (which vest

after three years), as well as a $1.875 million annual bonus upon achieving certain performance

goals.  He also stands to receive a "cost synergy bonus" as high as $45 million which is payable in

the event that the combined company has achieved certain cost synergies as of the third anniversary

of the effective date of the Proposed Transaction, as depicted in the following chart contained in

Exhibit A to the Executive Chairman Agreement (and reproduced in the Proxy):

| Cost Synergy Level Attained | Cost Synergy Bonus Amount |
|---|---|
| Less than $150 mm | $          0 |
| $150 mm | $          0 |
| $225 mm | $     15 mm |
| $300 mm | $     30 mm |
| $350 mm | $     45 mm |
| More than $350 mm | $     45 mm |

34.     Notwithstanding the apparent fact that Stanley and certain Black & Decker insiders

may obtain significant benefits in connection with the Proposed Transaction, the Board initially

failed to disclose all material information to the Company's shareholders to enable them to cast an

informed vote on the Proposed Transaction.

35.     For example, in the "Background of the Merger" section, the Proxy fails to disclose

the nature of the previous discussions between Black & Decker and Stanley, other than noting that

they "have discussed the possibility of a strategic business combination several times over the past

30 years."  These generic comments, standing alone, cannot possibly inform Black & Decker's

shareholders about the nature of the companies' prior contacts and discussions.

36.     The Proxy also fails to disclose the basis of Archibald's belief that the exchange ratio

associated with any potential transaction "would have to be in the range of 1.2 to 1.3 shares of

Stanley common stock for each share of Black & Decker common stock . . . ."  However, this belief,

which the Proxy indicates Archibald communicated to Lundgren on July 16, 2009, established both the floor and ceiling of the stock-based consideration payable in the Proposed Transaction. Indeed, it is no coincidence that, in connection with the Proposed Transaction, Stanley will exchange 1.275 shares of its common stock for each share of Black & Decker common stock. Accordingly, the materiality of this information – which ultimately dictated what the Company's shareholders would receive in a sale of the Company to Stanley – cannot be understated.

37.     The Proxy further indicates that the Board considered "strategic alternatives available to Black & Decker if it proceeded on a stand-alone basis," implying that the Board believed that the Proposed Transaction would be more beneficial for the Company and its shareholders than if the Company were to remain independent. The Proxy, however, fails to disclose information that the Board considered in making this determination – information that Black & Decker shareholders would most certainly consider material.

38.     In addition, while the Proxy discloses that the Board established a "Transaction Committee" consisting of defendants Burns, Griswold and Ryan, it fails to provide any detail as to how or why those individuals were selected. As the Proxy discloses, however, the Transaction Committee was formed to assist management and the Board "in reviewing the Stanley proposal" and charged with "evaluat[ing] further the possible benefits to Black & Decker stockholders of a strategic business combination with Stanley." Consequently, the Transaction Committee was vested with the authority to vet the terms of the Proposed Transaction, which the Proxy suggests that it did. Without additional information concerning the formation of the Transaction Committee, however, the Company's shareholders cannot determine for themselves whether the Transaction Committee truly had their best interests in mind. These concerns are particularly prevalent because of

Griswold's intimate relationship with Deutsche Bank, Stanley's financial advisor in connection with the Proposed Transaction.

39.     Another significant issue as to which the Proxy's disclosure is lacking concerns Archibald's compensation arrangements following the Proposed Transaction.  Indeed, although Archibald's decision to relinquish certain benefits payable under his employment agreement with Black & Decker was widely reported in the press, so too was his prospect of receiving a lucrative compensation package from Stanley after the close of the Proposed Transaction.  Nevertheless, the Proxy fails to disclose material information concerning the manner in which Archibald's pay package was determined, nor does it explain why he stands to receive a multimillion dollar bonus contingent upon the generation of various cost synergies resulting from the Proposed Transaction. The Proxy also fails to disclose whether Stanley – or anyone else, for that matter – consulted a compensation expert to assess the reasonableness of Archibald's prospective compensation.

40.     The Proxy further fails to disclose material information concerning the analyses that Black & Decker's financial advisor, J.P. Morgan Securities Inc. ("J.P. Morgan"), conducted in connection with the Proposed Transaction.  For example, although J.P. Morgan used financial projections relating to Black & Decker that the Company's management developed for the years 2010 to 2012, the Proxy does not reveal how J.P. Morgan extrapolated information with respect to its *Discounted Cash Flow Analysis* through the year 2019 – *i.e.*, seven years beyond the projections that management had created.[5]  Rather, the Proxy merely notes that J.P. Morgan "assumed sales growth

---

[5]  The Proxy indicates that J.P. Morgan conducted a discounted cash flow analyses for both its "Black & Decker Analysis" and its "Stanley Analysis."  With respect to the Black & Decker Analysis, the Proxy indicates that "J.P. Morgan conducted a discounted cash flow analysis for the purpose of determining the implied equity value per share for Black & Decker common stock on a stand-alone basis [without synergies] . . . ."  In contrast, with respect to the Stanley Analysis, the Proxy indicates that "J.P. Morgan conducted a discounted cash flow analysis for the purpose of

and margins thereafter through 2019 that were reviewed with the management of Black & Decker." This single statement does not provide the Company's shareholders with enough information to determine how J.P. Morgan developed an additional seven years of Black & Decker financial projections on its own, when management clearly did not furnish the information.

41.     Furthermore, the Proxy does not disclose various additional material information concerning J.P. Morgan's financial analyses, including, among other things, understandable definitions of "fair value" and "leverage adjusted basis" – terms used in its *Selected Companies Analysis* (for Black & Decker and Stanley) and its *Relative Valuation Analysis*, respectively.

42.     Finally, the Proxy fails to provide a breakdown of the synergies expected to result from the Proposed Transaction, including the sources and amounts of any such synergies.  These potential synergies, as well as the alleged benefits that Black & Decker's shareholders could reap from them, fueled the Board's decision to pursue the Proposed Transaction and convinced it that the Company's prospects as a stand-alone entity – as it had been for a century – were limited.  As such, the breakdown of these synergies – *i.e.*, how they are expected to occur – is of integral importance to Black & Decker's shareholders.

43.     In view of the foregoing, adequate disclosure must be made to the Company's shareholders to enable them to cast a fully informed vote on the Proposed Transaction.  In the absence of such disclosure, Black & Decker and its shareholders will suffer irreparable harm because

---

determining the implied equity value per share for Stanley common stock on a stand-alone basis [without synergies] . . . ."

such shareholders will be forced to make an uninformed decision, which places their interests – and the Company's – at risk.[6]

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

44.     The Individual Defendants, by virtue of their positions as directors and officers of Black & Decker, owe fiduciary duties of loyalty, good faith, due care and candor to the Company and its public shareholders.  By virtue of these positions the Individual Defendants have, and at all relevant times had, the power to control and influence, and did control and influence, the Company. Accordingly, the Individual Defendants were and are required to, among other things: manage Black & Decker in a fair, just and equitable manner; act in furtherance of the best interests of the Company and its shareholders; refrain from abusing their positions of control, including by favoring their own interests at the expense of Black & Decker and its shareholders.

45.     Moreover, because the Proposed Transaction represents a change in control and sale of the Company's assets, the Individual Defendants have a fiduciary obligation to, among other things: ascertain the fair value of the Company; determine whether a proposed sale of Black & Decker is in the Company's best interests, as well as its shareholders'; refrain from discouraging or inhibiting alternative offers to acquire control of the Company or its assets; and maximize the consideration payable in connection with any such change in control or sale.

## CLASS ACTION ALLEGATIONS

46.     As to all Defendants except nominal defendant Black & Decker, the Class Plaintiffs bring this action individually and as a class action pursuant to Fed. R. Civ. P. 23, *et seq.*, on behalf of

---

[6] On January 15, 2010, Stanley, with Black & Decker's input and approval, issued Amendment No. 1 to the Proxy ("Amendment No. 1").  Although Amendment No. 1 discloses additional information that addresses the disclosure deficiencies identified herein, this information will not be disseminated to shareholders until the definitive Proxy is issued.

all public shareholders of the Company and their successors in interest, except Defendants herein and their affiliates, who are or will be threatened with injury arising from Defendants' actions as more fully described herein (the "Class").

47.     This action is properly maintainable as a class action.

48.     The class of stockholders for whose benefit this action is brought is so numerous that joinder of all Class members is impracticable.  Black & Decker's shares are publicly traded on the NYSE.  As such, the Class Plaintiffs believe that there are hundreds, if not thousands, of public shareholders of the Company.

49.     Questions of law and fact are common to the Class including, *inter alia,* whether:

(a)     The Individual Defendants have breached their fiduciary duties in connection with the Proposed Transaction by, among other things, failing to disclose all material information to the Company's public shareholders necessary for them to cast an informed vote;

(b)     Stanley aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(c)     The Class Plaintiffs and the other members of the Class will be irreparably damaged by the wrongs complained of herein.

50.     The Class Plaintiffs are committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature.  Moreover, their claims are typical of those of the other members of the Class and they have the same interests as the other members of the Class. Accordingly, the Class Plaintiffs will fairly and adequately represent the Class.

51.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and

establish incompatible standards of conduct for Defendants and those who are alleged to have acted in concert with them.

## DERIVATIVE AND DEMAND ALLEGATIONS

52.     The Derivative Plaintiffs were, at all relevant times, the owners of Black & Decker common stock and pursue the claims alleged herein derivatively in and for the benefit of nominal defendant Black & Decker.  The Derivative Plaintiffs will adequately and fairly represent the interests of Black & Decker and its shareholders.  This action is not a collusive one to confer jurisdiction on the Court which it would not otherwise have.

**A.     Demand Refused Allegations**

53.     On November 9, 2009, Plaintiff Simon, by her counsel, sent a demand letter to the Black & Decker Board (the "Demand Letter") asking the "Board to terminate the proposed Merger and either renegotiate the sale of the Company . . . and achieve a materially higher price or seek a third party buyer ready and able to offer superior terms to those proffered by Stanley."

54.     Additionally, Simon demanded that "the Board conduct an investigation into any potential wrongdoing by officers or directors of the Company in the formulation of the Merger Agreement," and make public certain information within five business days "so that shareholders can exercise an informed choice when deciding whether to vote in favor of the Merger."

55.     On November 12, 2009, Simon's counsel received a letter from Black & Decker's SVP and General Counsel acknowledging receipt of the Demand Letter.  The letter provided, in full, as follows:

> I write in response to your demand letter dated November 9, 2009.  The Board of Directors of The Black & Decker Corporation has been advised of your correspondence.  The Board intends to promptly review your demand letter and determine what steps are appropriate.  I will advise you sometime next week as to how the Board has elected to proceed.

56.     On November 23, 2009, Simon's counsel received a letter from counsel for the Board following up on the November 12, 2009 response, which provided, in pertinent part, as follows:

> As you may know, last week the Corporation's Board of Directors formed a special committee of disinterested directors (the "Special Committee") to, among other things, investigate the allegations made in your demand letter and determine the appropriate response that would be in the best interest of the Corporation.  I am advised that the Special Committee has retained David Clarke and Jim Mathias of the firm DLA Piper LLP (US).  I expect that, at an appropriate time, you will be contacted by one or both of them regarding your letter.

57.     Prior to commencing her action on December 14, 2009, Simon had not received a further reply to her Demand Letter and believed that the Board had constructively refused her demand.  Additionally, as explained herein, demand would have nevertheless been futile.

**B.     Demand Futility Allegations**

58.     Plaintiff Graziadei did not make demand on the Board to investigate or otherwise pursue the claims alleged herein because any such demand would have been a futile and useless act, not only because Simon's demand was constructively refused, but also for the following reasons:

(a)     If Graziadei had made demand on the Board and awaited a response, various aspects of the Proposed Transaction could have been completed during the pendency of the demand, threatening irreparable harm to the Company and the unaffiliated public shareholders;

(b)     As alleged herein, the Board and various executive officers knew of and/or benefitted from the conduct complained of herein.  In addition, each member of the Board is, directly or indirectly, the recipient of remuneration paid by the Company, including benefits, stock options, and other emoluments by virtue of their Board membership and control over the Company, the continuation of which is dependent upon their cooperation with the other members of the Board, and their participation and acquiescence in the wrongdoing set forth herein, and are therefore incapable of exercising independent objective judgment in deciding whether to bring this action;

(c)     The members of the Board have been named as Individual Defendants herein, and, as such, would have been forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they would not do, if they pursued these claims. Moreover, any suit by the directors of Black & Decker to remedy these wrongs would likely have exposed the Individual Defendants and Black & Decker to additional civil actions being filed against one or more of the Individual Defendants.  Thus, the members of the Board are hopelessly conflicted in making an independent determination of whether to sue themselves;

(d)     Because of their association as directors of the Company and their positions as present or former employees, the Individual Defendants are dominated and controlled so as not to be capable of exercising independent objective judgment.  In addition, in connection with the Board's approval of the Company's entry into the Merger Agreement, Archibald abstained from the vote, which further demonstrates that he himself recognized the conflicted nature of his involvement; and

(e)     Black & Decker's current and past officers and directors are protected by directors' and officers' liability insurance against personal liability for the breaches of fiduciary duty alleged herein, which they caused the Company to purchase for their protection with corporate funds, *i.e.*, monies belonging to the Company's shareholders.  However, due to certain changes in the language of directors' and officers' liability insurance policies over the past few years, it is likely that the directors' and officers' liability insurance policies covering the Individual Defendants in this case contain provisions that purport to eliminate coverage for any action brought directly by Black & Decker against them, known as the "insured versus insured" exclusion.  As a result, if these directors were to sue themselves or certain of the officers of Black & Decker, there would be no directors' and officers' insurance protection and they would face the prospect of a large uninsured liability.  On the other hand, if a suit were brought derivatively, insurance coverage would exist.

18

## COUNT I

### (Class Claim)

### Breach of Fiduciary Duty against the Individual Defendants

59.     Other than those allegations which pertain to the derivative claims alleged herein, the Class Plaintiffs repeat, reallege and incorporate all of the allegations set forth above as if fully set forth herein.

60.     As alleged herein, the Individual Defendants have violated their fiduciary duties to Black & Decker and its public shareholders, by, among other things, failing to make adequate disclosure to them.

61.     In the absence of all material information, the Company's shareholders cannot cast an informed vote on the Proposed Transaction.  An uninformed vote, however, would threaten their best interests, because they would not be able to determine for themselves whether the consideration offered in connection with the Proposed Transaction is fair and reasonable to them.

62.     Accordingly, Plaintiffs and the Class will be irreparably harmed as a result of the conduct alleged herein, for which they have no adequate remedy at law.

## COUNT II

### (Class Claim)

### Aiding and Abetting Breach of Fiduciary Duty against Stanley

63.     Other than those allegations which pertain to the derivative claims alleged herein, the Class Plaintiffs repeat, reallege and incorporate all of the allegations set forth above as if fully set forth herein.

64.     As alleged herein, Stanley aided and abetted the Individual Defendants' breaches of fiduciary duty, by, among other things, encouraging and facilitating such breaches in order to acquire the Company.

65.     Indeed, not only did Stanley attempt to acquire the Company for less than fair value, but it also offered the prospect of continued employment to Black & Decker executives and six of its directors – including Archibald – in order to facilitate a sale of the Company.

66.     Stanley was also instrumental in preparing and issuing the Proxy, which omits material information that will preclude the Company's shareholders from casting an informed vote on the Proposed Transaction.

67.     Accordingly, Plaintiffs and the Class will be irreparably harmed as a result of the conduct alleged herein, for which they have no adequate remedy at law.

## COUNT III

### (Derivative Claim)

### Breach of Fiduciary Duty against the Individual Defendants

68.     Other than those allegations which pertain to the class action claims alleged herein, the Derivative Plaintiffs repeat, reallege and incorporate all of the allegations set forth above as if fully set forth herein.

69.     As alleged herein, the Individual Defendants have violated their fiduciary duties to Black & Decker, by, among other things, failing to ensure that an informed vote of the Company's shareholders will take place in connection with the Proposed Transaction.  An uninformed vote would threaten the Company's century-long existence as an independent entity and rich heritage as a leading manufacturer of hardware and home improvement tools and accessories.

70.     Moreover, the Individual Defendants may have ostensibly failed to otherwise protect the Company's interests.

71.     Accordingly, Black & Decker will be irreparably harmed as a result of the conduct alleged herein, for which it has no adequate remedy at law.

**COUNT IV**

**(Derivative Claim)**

**Aiding and Abetting Breach of Fiduciary Duty against Stanley**

72.     Other than those allegations which pertain to the class action claims alleged herein, the Derivative Plaintiffs repeat, reallege and incorporate all of the allegations set forth above as if fully set forth herein.

73.     As alleged herein, Stanley aided and abetted the Individual Defendants' breaches of fiduciary duty, by, among other things, encouraging and facilitating those breaches in order to acquire the Company.  Indeed, not only did Stanley attempt to acquire the Company for less than fair value, but it also offered the prospect of continued employment to Black & Decker executives and six of its directors – including Archibald – in order to facilitate a sale of the Company.

74.     Stanley was also instrumental in preparing and issuing the Proxy, which omits material information that will preclude the Company's shareholders from casting an informed vote on the Proposed Transaction.  As alleged herein, an uninformed vote would threaten the Company's century-long existence as an independent entity and rich heritage as a leading manufacturer of hardware and home improvement tools and accessories.

75.     Accordingly, Black & Decker will be irreparably harmed as a result of the conduct alleged herein, for which it has no adequate remedy at law.

**WHEREFORE**, Plaintiffs respectfully request the following relief from this Court:

A.     Declaring that this action is properly maintainable as a class action, certifying the Class Plaintiffs as Class representatives and designating their counsel as Class counsel;

B.     Declaring that this action is properly maintainable as a shareholder derivative action and that the Derivative Plaintiffs are adequate representatives;

C.      Preliminarily and permanently enjoining the Individual Defendants, and anyone acting in concert with them, including Stanley, from proceeding with a sale of the Company unless and until the Individual Defendants have acted in accordance with their fiduciary duties;

D.      Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorney's fees, expert fees and other costs; and

E.      Granting such other and further equitable relief as the Court deems just and proper.


DATED:  January 22, 2010                    BROWN GOLDSTEIN & LEVY, LLP


                                            _____
                                                */s/ Daniel F. Goldstein*
                                            DANIEL F. GOLDSTEIN (Bar No. 01036)

                                            120 East Baltimore Street, Suite 1700
                                            Baltimore, MD  21202
                                            Telephone:  410/962-1030
                                            410/385-0869 (fax)

                                            *Liaison Counsel for Plaintiffs*

                                            COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
                                            SAMUEL H. RUDMAN
                                            DAVID A. ROSENFELD
                                            JOSEPH RUSSELLO
                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)

                                            *Chair of the Executive Committee*

                                            THE WEISER LAW FIRM, P.C.
                                            PATRICIA C. WEISER
                                            DEBRA S. GOODMAN
                                            HENRY J. YOUNG
                                            121 North Wayne Avenue, Suite 100
                                            Wayne, PA  19087
                                            Telephone: 610/225-2677

CARNEY WILLIAMS BATES
   BOZEMAN & PULLIAM, PLLC
RANDALL K. PULLIAM
11311 Arcade Drive, Suite 200
Little Rock, AR  72212
Telephone: 501/312-8500

BRANSTETTER STRANCH &
   JENNINGS PLLC
JAMES G. STRANCH, III
J. GERARD STRANCH, IV
STEVEN J. SIMERLEIN
227 Second Avenue North, 4th Floor
Nashville, TN  37201
Telephone: 615/254-8801

WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
Gregory Mark Nespole
Gustavo Bruckner
Martin Restituyo
270 Madison Avenue
New York, NY  10016
Telephone:  212/545-4600

*Members of the Executive Committee*

EMERSON POYNTER LLP
SCOTT E. POYNTER
500 President Clinton Avenue, Suite 305
Little Rock, AR  72201

LAW OFFICE OF JACOB FOGEL, P.C.
Jacob T. Fogel
32 Court Street, Suite 602
Brooklyn, NY  11201

MURRAY, FRANK & SAILER LLP
BRIAN MURRAY
275 Madison Avenue, Suite 801
New York, NY  10016

*Additional Counsel for Plaintiffs*